INHABITANTS OF COLERAIN *vs.* WALTER BELL, JR. & another.

When a collector of taxes is removed from office, he and his sureties are liable, on his official bond, for such part of the taxes committed to him as are lost by reason of his remissness, although the uncollected taxes have been committed to his successor, who has also given bond for the faithful discharge of the duties of his office.

When the same person is collector of taxes for two successive years, and pays to the town the arrears of taxes collected on the tax list of the first year, with the money collected on the tax list of the second year — the town not knowing whence the money came — and fails to perform the condition of his official bond for the second year, his sureties on that bond, when sued for his default, are liable to the extent of the default, and are not entitled to deduct the amount so paid by him for the taxes of the first year.

When a collector is removed from office within a year after the taxes are committed to him to collect, his sureties, if sued on his official bond, may give evidence, for the purpose of reducing damages, that the uncollected taxes of certain persons on his tax list could not be collected, by reason of their inability to pay. *Aliter,* if the collector was not removed until after a year from the time when the taxes were committed to him.

ON the 9th of July 1841, James M. Shearer, as principal, and the defendants, Walter Bell, jr. and Lewis Shearer, as sureties, executed a joint and several bond to the plaintiffs, in the penal sum of $7000. The condition of the bond was thus : " Whereas the aforesaid James M. Shearer has been duly chosen and appointed a collector of taxes, within and for the said town of Colerain, for the year aforesaid ; now if the said James M., with all due fidelity, collect and pay over to the several persons, and at the several places, the several sums named in all and singular the tax bills and warrants which shall be duly committed unto him during the said year, or while he shall so be collector of taxes within and for the said town of Colerain, within the several times which shall be therein appointed and limited, and save the said inhabitants harmless from all costs by reason of any negligence and misfeasance of the said James M. in his said office and conduct of collector, as aforesaid, then the foregoing obligation to be null and void."

On the 2d of March 1844, the plaintiffs and the said sureties entered into an agreement, in the manner directed by Rev Sts. *c.* 114, § 2, to refer the plaintiffs' demands on said bond to the determination of Henry Chapman, Solomon Reed and

Thaddeus Coleman, Esqrs. These arbitrators returned their award to the court of common pleas, " that the said inhabitants of Colerain do recover of the said Lewis and Walter the sum of $1431·51 damages, and costs of reference, taxed at $40·70, together with the costs of court to be taxed by the court. The said award is made, nevertheless, subject to the opinion and order of the court upon the following legal questions. The damages claimed are for injuries arising to the town from the neglect of said James M. to perform the conditions of said bond. The defendants proved that the said James M. was removed by the town, in 1842, from his said office of collector, and that a new collector was appointed, and new bonds taken. At the time of the said removal and substitution, which was done with the assent and by the request of the sureties, the sum of $615·95 remained uncollected on said James M.'s tax bills. Upon this evidence, the defendants moved the arbitrators to strike out of the plaintiffs' claim the said sum of $615·95 ; which motion was overruled, upon the ground that the defendants were liable for the damages suffered on the day of the breach of the bond, subject, however, to be cut down by any payments directly or indirectly made by said James M. Shearer, or his sureties, or the new collector, who was one of said sureties. If the ruling of the arbitrators was erroneous, then the court will deduct, from the sum awarded to the town of Colerain, so much of said sum of $615·95, as has not been already virtually credited to the said Lewis and Walter by the said town.

" The evidence further showed that the said James M. was collector of taxes for the year 1840 ; also that taxes collected by him from bills for the year 1841 were applied by him, in some cases, to cover a deficiency of his payments for the year 1840. Upon this evidence, the defendants claimed that the arbitrators should make an application of these payments to reduce the damages arising to the town from the deficiencies of 1841. This claim was refused by the arbitrators. If the court are of opinion that such payments were in fraud of the rights of the sureties, or that, for any other reason, this ruling

of the arbitrators was erroneous, then the exact amount of such payments is to be ascertained by evidence, and that sum deducted from the above award.

" The defendants offered to prove that certain persons, taxed in 1841, were unable to pay their assessments ; and they claimed that such evidence should be received by the arbitrators, in reduction of damages. But, inasmuch as it also appeared that said James M., the collector, neither distrained the property nor arrested the bodies of said persons, nor applied to the assessors for an abatement of their taxes, it was held by the arbitrators, that the defendants could not give this evidence in mitigation of damages. If this ruling was erroneous, then the amount of such assessments, if any, is to be ascertained by evidence, and the sum, so found, deducted from the award."

The court of common pleas accepted the award, and ordered judgment thereon, and the defendants appealed to this court.

*Davis & Devens*, for the defendants. These sureties are not liable for the uncollected balance which was committed to the collector who was appointed on the removal of their principal from office. *Sthreshley* v. *U. States*, 4 Cranch, 169. *U. States* v. *Maurice*, 2 Brock. 96. *U. States* v. *Wardwell*, 5 Mason, 82. Nor are they liable for the sums collected by their principal on the rate bills of 1841, and paid by him to the plaintiffs, and by them applied towards the taxes of 1840. As against these defendants, the plaintiffs could not legally thus apply those payments. *U. States* v. *January*, 7 Cranch, 572. *Seymour* v. *Van Slyck*, 8 Wend. 403. Nor can they be held for that part of the taxes of 1841 which was not collectable. *Probate Court* v. *Bates*, 10 Verm. 285. *Selfridge* v. *Lithgow*, 2 Mass. 374. *Brooks* v. *Hoyt*, 6 Pick. 468.

*Aiken,* for the plaintiffs. The arbitrators deducted from the $615·95 so much thereof as was collected and paid in by the substituted collector. The motion to strike out that full sum must therefore have been made on the ground that the new bond was either a payment, or accord and satisfaction, or a substituted security. But it was neither.

A debtor has a right to appropriate his payments as he pleases. And as there is no evidence that the plaintiffs knew that the collections for 1841 were applied, by the collector, towards payment of the taxes of 1840, the defendants cannot complain of bad faith on the part of the plaintiffs, and have no legal defence on this point. *Hilton* v. *Burley*, 2 N. Hamp. 196. *U. States* v. *Kirkpatrick*, 9 Wheat. 720. *Seymour* v. *Van Slyck*, 8 Wend. 403. Nor are they entitled to a deduction of the taxes of those who were unable to pay. The collector is chargeable for the taxes of such persons, unless he commits them to prison within a year. Rev. Sts. *c.* 8, § 43. Rev. Sts. p. 804. *Inhabitants of Towns end* v. *Walcutt*, 3 Met. 152.

DEWEY, J. The removal of the collector from office did not discharge him from liabilities that had already attached for defaults in the duties of the office. In all cases where, by reason of his remissness in enforcing the collections, the tax had been uncollected, and, from a change of circumstances, was unavailable in the hands of his successor, he would be chargeable therewith.

The question of more importance and difficulty arises upon the point taken in the defence as to the liability of the collector for the taxes of those persons who were, at the time of the assessment, poor and unable to pay their taxes. It is said that, as to such, nothing has been lost by remissness of the collector, and his power of committal to jail being taken away from him by his removal from office, he ought not to be charged with the taxes in such cases. The position taken by the defendants on this point has so much apparent equity, and is so far sustained by the general rule as to damages recoverable for a neglect of official duty, that if the question were to be decided upon the principles of the common law, and irrespective of certain statute provisions directly bearing upon it, we should be strongly inclined to hold that the defendants might show, in avoidance of their liability for certain taxes, that the individuals against whom such taxes were assessed were not, at any time after the tax bill was placed in

the hands of the collector, of sufficient ability to pay the same, and that a levy of a warrant of distress upon them would have been unavailing. But the statute provisions, found in the acts regulating the collection of taxes, seem too direct and significant to admit of the application of so favorable a prin ciple in favor of the collector. The Rev. Sts. *c.* 8, § 43, and the "act to amend the revised statutes," p. 804. clearly limit the right to abatement of taxes, assessed upon persons unable to pay them, to taxes assessed upon those who have been committed to prison within one year from the receipt of the tax bill by the collector ; except as to such cases as the town may see fit voluntarily to abate as to persons who have been committed after the year. So far as the collector has neglected to commit to prison, within the year after the receipt of his tax bill, he thereby becomes chargeable for the taxes, if the town insist upon his liability, and require payment from him. Assuming, therefore, that the tax bills were in the hands of the collector for the full period of one year before his removal, and that he neglected to commit to prison those who failed to pay their taxes, he cannot now claim a deduction for the taxes of such persons. If he were removed from office before the year had expired, then his liability would depend upon other principles, and he might show, in his discharge, that he had been guilty of no negligence, and that the persons thus taxed had been wholly unable to pay.

The only remaining question is as to the deduction claimed on account of certain sums received by the collector on the taxes for the year 1841, and applied by him in payment of arrearages due from him on the tax bill of the previous year. It is to be remarked that the case stated is not one of a fraudulent appropriation by the payee, in derogation of the rights of sureties. The case discloses no knowledge, on the part of the town, of the source whence the money was derived, which was applied in part payment of the taxes of 1840. Neither is it a case of misapplication of any specific funds which the collector was bound to pay to the treasurer of the town. The specific money received by a collector, in the

collection of taxes, is his money, and not that of the town. Such being the case, and the payment thereof being received by the town on account of arrearages of taxes of 1840, it cannot be said to be such a misapplication of payment that it should be withdrawn from its original application and applied to the taxes of 1841.

[It was ascertained that the collector was removed from office within a year after he received the tax list of 1841; although the contrary was assumed by both parties, when before the arbitrators. The court therefore ordered the award to be recommitted, that the arbitrators might " hear evidence on the point whether any of the persons taxed were wholly in-solvent and unable to pay, so that the town lost nothing by the default of the collector in not distraining or arresting, or what damage the town actually sustained." The defendants afterwards waived the recommitment, and judgment was entered on the award, by their consent.]